UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
|    RASHID, LLC | ) | CASE NO. 12-39082 |
|        Debtor. | ) | CHAPTER 11 |
| | ) | JUDGE JACQUELINE P. COX |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on Wednesday, January 30, 2013 at 10:00 am., or as soon thereafter as counsel may be heard, I shall appear before Judge Jacqueline P. Cox in courtroom 680 at the Courthouse located at 219 S. Dearborn, Chicago, IL, and shall then and there present the attached **Motion of the Debtor for (I) an Order (a) Establishing Bidding Procedures for the Sale of Certain Assets; (b) Setting Final Sale Hearing Date and (C) Approving Form of Notices; and (II) An Order (a) Authorizing Sale of Certain Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases**, and shall move the court for the entry of an order in accordance therewith.

                                                                        /s/Thomas W. Toolis
                                                                         Thomas W. Toolis

JAHNKE, SULLIVAN & TOOLIS, LLC.
Thomas W. Toolis (#6270743)
Firm # 44138
9031 W. 151st St, Suite 203
Orland Park, Illinois 60462
Attorneys for Debtor(s)
(708) 349-9333 (telephone)
(708) 349-8333 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned, being first duly sworn on oath, deposes and states that (s)he served the above-listed document to the above-listed party via U.S. Mail with proper postage prepaid by depositing said document in the mail located at 9031 W. 151st Street, Orland Park, IL 60462 on January 10, 2013.

                                                                        /s/Thomas W. Toolis

# SERVICE LIST

Call One
123 N. Wacker
Chicago, IL 60606-1796

First Midwest Bank
c/o Jonathan Rogers
Klein Daday Aretos & O'Donoghue, LLC
2550 W. Golf Rd., Suite 250
Rolling Meadows, IL 60008-4014

First Midwest Bank
One Pierce Bank
Suite 1500
Itasca, IL 60143-1254

Inland Commercial
2901 Butterfield Road
Oak Brook, IL 60523-1190

John Miller - Woerthwein & Miller
70 W. Madison 1515
Chicago, IL 60602

Manuel Buncio c/o
Rathje & Woodward, LLC
300 East Roosevelt Road, Suite 300
Wheaton, IL 60187

Manuel V. Buncio, Jr.
836 Wescott Road
Bolingbrook, IL 60440-9007

Talat Rashid
424 Primrose Lane
Bolingbrook, IL 60490

US Bankruptcy Court
219 S. Dearborn, 7th Floor
Chicago, IL 60604-1704

Patrick S. Layng
Office of the US Trustee
219 S. Dearborn St., Rm 873
Chicago, IL 60604-2027
Via the Court's CM/ECF System

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
|     RASHID, LLC | ) | CASE NO. 12-39082 |
|         Debtor. | ) | CHAPTER 11 |
| | ) | JUDGE JACQUELINE P. COX |

**MOTION OF THE DEBTORS FOR (I) AN ORDER (A) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR; (B) SETTING FINAL SALE HEARING DATE AND (C) APPROVING FORM OF NOTICES; AND (II) AN ORDER (A) AUTHORIZING SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) AUTHRIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The above-captioned debtor and debtor-in-possession (the "Debtor") filed this motion pursuant to Bankruptcy Code Sections 105, 363 and 365, Fed. R. Bankr. P. 2002, 6004 and 6006 for entry of (i) an order, substantially in the form attached hereto (a) establishing bidding procedures for the sale of substantially all assets; (b) setting a final sale hearing date; and (c) approving the form of notices thereof; and (ii) an order, substantially in the form attached hereto (a) authorizing the sale of substantially all assets free and clear of liens, claims, interests and encumbrances and (b) the assumption and assignment of certain executor contracts and unexpired leases.

<u>Background Facts</u>

1. On October 1, 2012, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor operates a Meinecke Car Care Franchise and has been in business since 2003.

3. At the time of this bankruptcy filing, the Debtor owed its senior secured lender First Midwest Bank, approximately $127,000.00.

4. The Debtor seeks to preserve the value of its assets with the goal of conducting an orderly liquidation of its assets in Chapter 11.

1

Exigent Circumstances and Marketing

5. As the Debtor's liquidity position has worsened, the Debtor has been left with no option available other than to pursue a transaction that will allow for the sale of its business in order to avoid what is likely to be a further deterioration of its business.

6. As a result, the Debtor entered into an Asset Purchase Agreement with Talat Rashid (the "Buyer"). A copy of the APA is attached as *Exhibit A.*

7. The Debtor submits that, given its current liquidity situation and continuing deterioration of its business, an expeditious sale of the Acquired Assets is in the best interests of this estate. In fact, the Buyer's potential purchase price is likely to decrease in the event the proposed sale is not timely consummated; the APA provides for an order approving Bidding Procedures (set forth below and attached) to be entered no later than February 13, 2013. Furthermore, while FMB is willing to support the Debtor's liquidity pending a sale, FMB is unwilling to extend such support for very long thereafter.

Proposed Sale

8. The salient terms of the APA are:

    **Purchase Price:** $5000.00 for the Acquired Assets (defined in the APA). Ideal has tendered a good faith deposit in the amount of $1000.00, which the Debtor will hold in an escrow account.

    **Acquired Assets:** Buyer seeks to purchase certain of the Debtor's assets listed on Schedule 1.1 to the APA, which schedule remains in process but will consist of machinery and equipment, inventory, intellectual property, certain executor contracts, supplies, motor vehicles, computer hardware and software, Franchise Rights, licenses and permits and other personal property (collectively, "Acquired Assets").

**Assumed Liabilities:** The Buyer will assume all obligations arising after the Closing Date under the Acquired Contracts and all cure costs to be paid pursuant to Section 365 in connection with assumption and assignment of the Acquired Contracts.

**Sale Free and Clear:** The Acquired Assets however, shall be purchased free and clear of all liens, claims, interests and encumbrances. The Buyer will assume the secured debt owed to FMB in addition to the purchase price.

## Proposed Bidding Procedures

9. The Debtor proposes the following Bidding Procedures as being best designed to maximize the value of the Acquired Assets.

   a. **Assets to be Sold.** The Debtor is offering the Acquired Assets for sale. The Debtor shall retain title to assets that are not subject to a Successful Bid (defined below) and approved for sale at the Sale Hearing.

   b. **As Is, Where Is.** The sale of the Acquired Assets shall be on an "as is, where is" basis without representations or warranties of any kind except to the extent set forth in the APA. The Acquired Assets shall be sold free and clear of any liens, claims, interests and encumbrances pursuant to Section 363, with all liens, claims, interests and encumbrances to attach to the proceeds of the sale.

   c. **Qualifying Bid.** The Debtor requires, as a precondition to participation in the Auction (defined below):

   (i) The submission of a competing bid for some or all of the Acquired Assets no later than 5:00 p.m. Central Standard Time at least three (3) business days prior to the Auction (a **"Qualified Bid"**);

3

(ii)     Each Qualifying Bid must be submitted in writing to counsel for the Debtor, c/o Thomas W. Toolis of Jahnke, Sullivan & Toolis, LLC, 9031 W. 151st Street, Suite 203, Orland Park, IL 60462 via overnight mail, facsimile (708-349-8333), or electronic mail (twt@jtlawllc.com). Counsel for the Debtor shall immediately distribute copies of all Qualifying Bids to (1) counsel for the Buyer, if any, (2) Counsel for First Midwest Bank, Klein Daday Aretos and O'Donoghue, LLC 2550 W/ Golf Rd., Suite 250, Rolling Meadows, IL 60008 (3) Counsel for Manuel Buncio, Abigail J. Jung, Rathje & Woodward, LLC, 300 E. Roosevelt Rd., Ste. 300, Wheaton, IL 60187.

(iii)    Each Qualifying Bid shall be accompanied by:

(1) An earnest money deposit by wire transfer, certified or cashier's check, in the amount of $1000.00;

(2) An executed confidentiality agreement;

(3) An executed asset purchase agreement substantially in the form of the APA along with a red-line marked against the APA; and

(4) Written evidence of a commitment for financing or other evidence of the party's ability to consummate the transaction and payment of the purchase price in cash at the Closing.

Each Qualifying Bid shall be irrevocable until the earlier of (i) the closing sale of the Acquired Assets, or (ii) the withdrawal of the Acquired Assets for sale by the Debtor.

d. **Bid Protection.** The Debtor requires that (x) any initial bid at the Auction be higher and better than the offer of Buyer with a cash payment at closing that is not less than

$10,000.00; and (y) any subsequent bid at the Auction (a "Competing Bid") be at least $5000.00 greater than the preceding bid, plus assumption of all secured Debt of FMB.

e.  **Break-Up Fee.** The Buyer shall be entitled to a break-up fee in the amount of $5000.00 plus Buyer's reasonable out of pocket legal and other fees and expenses not to exceed an additional $25,000.00 (together, the **"Break-Up Fee"**) in the event that either (x) the Bankruptcy Court fails to approve a sale to Buyer as provided herein and instead approves as sale of some or all of the Acquired Assets to any entity that has submitted a Competing Bid at the Auction and such sale closes, or (y) FMB credit bids with respect to, or forecloses on, some or all of the Acquired Assets.

> The Break-Up Fee shall be entitled to administrative priority under Section 364(c)(1) of the Bankruptcy Code and shall constitute a surcharge under Section 506(c) of the Bankruptcy Code on any interest of Seller in the Acquired Assets which is subject to any lien, security interest or other encumbrance.
>
> If Buyer elects to participate in bidding at the Auction, Buyer may credit the Break-Up Fee towards its bid.

f.  **Auction.** If the Debtor receives a Qualifying Bid, the Debtor shall conduct an auction (the "Auction") at the offices of Jahnke, Sullivan & Toolis, LLC, 9031 W. 151st Street, Suite 203, Orland Park, IL 60462 on the date that is two (2) business days prior to the Sale Hearing. The Debtor shall notify all Qualified Bidders of the Auction. The Debtor may adopt ruled for the Auction that, in its business judgment, will promote the goals of the bidding process and that are not inconsistent with the Bidding Procedures, the APA, the Bankruptcy Code or any order of this Court. Following the Auction, the Debtor shall review the Qualifying Bids and, in consultation with FMB, identify the highest and best

bid as the "Successful Bid." The Debtor shall present the Successful Bid to the Court at the Sale Hearing.

g. **Return of Deposits.** The earnest money deposit of a Qualifying Bid shall be returned within three (3) business days of the earlier of (i) the closing of the sale and (ii) 30 days after the Sale Hearing. In the event that the holder of the Successful Bid defaults in the performance of its obligation to purchase the Acquired Assets pursuant to the Successful Bid, that person's earnest money deposit shall be forfeited and shall be immediately transferred to the Debtor. Notwithstanding the foregoing, such forfeiture shall not be in full satisfaction of any damages caused to any person by the default as described herein.

## Notice Procedures

10. The Debtor proposes to serve a notice, in the form attached hereto as Exhibit B, within three (3) business days following entry of an order approving the Bidding Procedures (draft Bidding Procedures Order attached hereto as Exhibit C), of :

- The Order approving the Bidding Procedures,
- The Bidding Procedures,
- The time and place of the Auction,
- The deadline of March 13, 2013 for filing objection to the proposed sale,
- The Sale Hearing of March 20, 2013

11. The notice shall be served upon: (a) the U. S. Trustee; (b) the Debtor's 20 largest creditors; (c) counsel to FMB; (d) counsel to Manuel Buncio; (e) counsel to the creditors 'committee, if one is appointed; (f) counsel to the Buyer; (g) all parties known to have expressed an interest in buying the Acquired Assets; (h) all non-Debtor parties to the executor contracts and unexpired leases; and (k) all other parties entitled to, or requesting, notice in this case.

## Assumption and Assignment Procedures

12. The Buyer proposes acquiring certain executor contracts and unexpired leases of the Debtor (the "Acquired Contracts") which are listed in Schedule 1.1(b) to the APA. Pursuant to the APA, the Buyer will assume and pay all cure amounts under the Acquired Contracts.

13. The APA provides that, on or before the third (3rd) day prior to the Auction, the Buyer may update the Schedule of Acquired Contracts and the Schedule of Excluded Contracts to the APA to add an executor contract or unexpired lease to either schedule. On or before the third (3rd) day prior to the Sale Hearing, the Buyer may update the Schedule of Acquired Contracts and the Schedule of Excluded Contracts to the APA to remove an executor contract or unexpired lease from either schedule.

14. Accordingly, the Debtor shall, no more than three (3) business days after entry of the Bidding procedures Order, serve notice by first-class mail on the non-Debtor parties to the executor contracts and unexpired leases, which notice shall set forth (a) the proposed assignment; (b) the amount, if any, that the Debtor determines is necessary to cure any existing default under the contract or lease; (c) an identification and description of the Buyer and its ability to perform the obligations under the Acquired Contract; (d) a deadline of March 13,2013 for filing and serving (upon the Debtor's counsel and the Buyer's counsel) a written objection to the proposed assignment of the Acquired Contract (a "Section 365 Objection"); (e) the Debtor's position that their failure to timely file and serve a Section 365 Objection will deem them to have (i) consented to the proposed cure amount, if any, the Buyer's or Successful Bidder's adequate assurance of future performance, the Sale Order's application to the assignment of their contract with the Debtor and (ii) waived their right to declare a default or termination under their contract with the Debtor; and (f) the cure amount, if still disputed, shall be heard by the Court at the Sale Hearing.

<u>Request to set Sale Hearing</u>

15. The Debtor intends to present the Successful Bid for approval by the Court on March 20, 2013 (i.e. two (2) business days after Auction).

16. The Debtor intends to seek entry of the Sale Order (attached as Exhibit D) at the sale hearing.

<u>Legal Authority</u>

**Debtor's Business Judgment:**

17. This Court's power to authorize a sale under 11 U.S.C. §363(b) of the Bankruptcy Code is to be exercised at its discretion, utilize a flexible, case by case approach. In re Baldwin United Corp., 43 B.R. 905 (Bankr. S.D. Ohio 1984). The key consideration is this Court's finding that a good business reason exists for the sale. In re Schipper, 933 F.2d 513 (7th Cir. 1991); Stephens Industries, Inc. v. McClung, 789 F.2d 386 (6th Cir.. 1986); In re Lionel Corporation, 722 F.2e 1063, 1070-71 (2nd Cir. 1983).

18. The Debtor believes a prompt sale of the Acquired Assets, pursuant to Section 363(b), to the Buyer of a Successful Bidder is the best and most viable option available to the Debtor's estate to maximize value of the Acquired Assets.

19. The Debtor has reason the be concerned that; (a) the value of the Acquired Assets is deteriorating and may deteriorate further if the proposed sale process is delayed, and (b) expenses and risks relating to the maintenance and security of the Acquired Assets. These concerns are shared by FMB.

**Bidding Procedures & Break-Up Fee:**

20. To maximize the probability that the Debtor obtains the greatest return for the Acquired Assets, the Debtor request approval of the Bidding Procedures. The procedures allow for a transparent, flexible process to achieve the highest return. The Debtor reserves the right to modify the Bidding Procedures if necessary, in its business judgment with the terms of the APA. Maximization of proceeds received by this estate is the dominant goal of the sale, as it should be. See Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147

B.R. 650, 659 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49(2nd Cri. 1993) (debtor's duty with respect to sales it to obtain highest price or greatest overall benefit for estate).

21. In furtherance of maximizing value received by the estate, bankruptcy courts typically find that use of bid procedures is appropriate. The Debtor submits that, here, the Bidding Procedures establish an appropriate process to identify, select and solicit bids and determine which bid is the highest or best bid.

22. A break-up fee is considered necessary to compensate a stalking horse bidder for its time, effort and expense in seeking to consummate a sale and in driving up the price for the purchased assets. See e.g., In re Hupp Indus, Inc., 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("without such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial's bidder…. due diligence")

23. The Break-Up Fee of $5000.00 is the Buyer's Purchase Price and, thus, is fair and reasonably calculated to produce the highest and best offers for the Acquired Assets. See e.g., In re Select Snacks, In., Case No. 07-18769 (Bankr. N.D. Ill., October 23, 2007) (Hollis, J.) (approving break-up fee equal to 3% of purchase price). The Break-Up Fee also includes a reasonably modest expense reimbursement of $25000.00 in favor of the Buyer. The Break-Up Fee shall be entitled to an administrative priority under Section 364(c)(1) of the Bankruptcy Code and shall constitute a surcharge under Section 506(c) of the Bankruptcy Code on any interest of the Debtor in the Acquired Assets which is subject to any lien, security interest or other encumbrance. The Break-Up Fee is appropriate when the Business has been determined to have a negative value as a growing concern.

24. Moreover, the Bidding Procedures require that an initial bid at the Auction have an overbid in the amount of $5000.00 above the Buyer's purchase price, with bidding increments of $5000.00 thereafter. This mechanism ensures that the Debtor is compensated for foregoing a known, willing purchaser in the Buyer for a new, unknown potential buyer. It also ensures that there is a

real increase in proceeds to the estate after deducting the Break-Up Fee (including the expense reimbursement) should the Buyer not be the Successful Bidder.

25. The initial overbid is fair and reasonable and is supported by applicable case law. See e.g., In re Colony Hill Assoc., 111 F.3d 269 (2d Cir. 1998) (requiring minimum overbid of purchaser's initial offer by at least 8.6%).

**Sale Free and Clear:**

26. Section 363(f) permits a sale of assets free and clear of liens, claims, interests and encumbrances. A sale free and clear is necessary to effectuate the transaction proposed here. Obviously, if the sale were subject to liens, claims, interests and encumbrances, the purchase price would be substantially lower other than the debt owed to FMB in the amount of $127,000.00 on the Acquired Assets.

27. Accordingly, the Sale Order provides that liens, claims, interests and encumbrances shall attach to the sale proceeds in the same validity and priority that they had prior to the sale. In light of this factor, the Debtor submits that a sale free and clear of liens, claims, interests and encumbrances is appropriate here.

**Assumption and Assignment:**

28. Section 365 permits assumption and assignment so long as defaults under the particular executor contracts and unexpired leases are cured and adequate assurance of future performance is provided.

29. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given practical construction. See e.g., EBG Midtown South Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 593 (S.D.N.Y. 1992).

30. Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property being assigned. See e.g., In re Bygraph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986)

10

31. In sum, the Debtor submits that the relief requested above is in the best interests of this estate and best designed to maximize the value of the Acquired Assets.

32. The Debtor has served this motion upon (a) the U.S. Trustee; (b) the Debtor's 20 largest creditors; (c) counsel to First Midwest Bank; and (d) counsel to Manuel Buncio.

WHEREFORE, for the foregoing reasons, the Debtor prays for the entry of orders:

A. Granting this motion;
B. Entering the Bidding Procedures Order, which approves the Bidding Procedures, the form of the notice of Bidding Procedures and sale transaction; and
C. Awarding such other relief as the Court deems just and proper

Rashid, LLC

By: /s/Thomas W. Toolis
Thomas W. Toolis

Thomas W. Toolis
Jahnke, Sullivan & Toolis, LLC
9031 W. 151st Streets, Suite 203
Orland Park, IL 60462
708-349-9333
708-349-8333 (Facsimile)